Thank you, Your Honor. May it please the Court, my name is Jennifer Merritt. I'm here today with co-counsel Hester Criswell, and together we represent appellant Joe Page in this matter. And you don't have to be a bit bashful, and you can speak up as loud as you want. Okay, thank you, Judge. I apologize. This is an appeal of a jury verdict in favor of the District Court's award of injunctive relief against a non-party, the Arkansas Department of Correction, to remove the disciplinary violation from Mr. Sanders' prison record. Mr. Sanders has filed a cross-appeal on the District Court's denial of his second motion for attorney's fees, which I plan to address in my rebuttal, unless the Court has questions now. The Court should reverse and dismiss on direct appeal for four reasons. First, on de novo review, the Court should hold that Mr. Page deserved judgment as a matter of law on the retaliation claim because there was some evidence to support the disciplinary charge that Mr. Page filed. Second, no substantial evidence supports two of the essential elements of Mr. Sanders' retaliation claim. Third, and this is discussed in our brief, and I plan to rely on the briefs on this issue, that Mr. Page was entitled to both sovereign and qualified immunity on these claims. And finally, even if the Court disagrees with me on all the other points, the District Court did reversibly err in awarding injunctive relief against the ADC because Mr. Sanders failed to demonstrate irreparable harm and the District Court abused its discretion in concluding otherwise. Now, my first point is that some evidence showed that Mr. Sanders was guilty of the disciplinary violation charged. It's settled law in this circuit that a defendant can defeat a retaliatory disciplinary claim by showing that there was only some evidence to support the decision of an impartial hearing officer. This Court's holding in Hartsfield v. Nichols controls this issue. The Court held that, quote, a report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as some evidence to support, or excuse me, upon which to face a disciplinary violation if the violation is found by an impartial hearing decision maker. That case was decided in 2008 and this Court reaffirmed and reapplied that same standard just last year in Santiago v. Blair. United States Supreme Court holds that in determining whether there is some evidence to support a disciplinary charge, the District Court cannot make independent credibility determinations or weigh the evidence. This Court similarly held in Goff v. Burton that the some evidence standards allows only a minimal review of the record. If there is, quote, some minimal probative value to the evidence that was before the impartial decision maker, then that's enough. Why do you think that's the correct rule in a retaliatory discharge, or a retaliatory discipline case, as opposed to just a general disciplinary case without any question about motive? Why couldn't a correctional officer base a retaliatory disciplinary measure on some evidence and thereby violate the rights of the inmate? I'm not certain that I'm understanding your question, Judge. Well, if the correctional officer has discretion whether to write up a disciplinary charge against inmates, and suppose the officer only writes up people against whom he wants to conduct, why shouldn't there be a cause of action for that inmate, even though there was some evidence to support his charge, if the evidence shows that the officer proceeded only because of a retaliatory motive? I think I'm understanding Your Honor's question. The inmate has to show that he was prevented from exercising a constitutional right because of an act of the defendant. If there is some evidence under this court's precedent, which this court has to follow in this case, this panel can't overrule the other cases. All right. Well, that's one answer. I just wondered if you wanted to defend the rule that's in our cases. Absolutely, because the critical issue is that there is an impartial hearing officer that is going to hear the evidence. In this case, there was not merely the statement of the disciplinary, or I'm sorry, of the officer, Mr. Page, my client. His statement charging Mr. Sanders with a disciplinary violation was not the only evidence that was before the hearing officer. Now, if it had been under Hartsfield and under Santiago, that would be enough under this court's precedent, but actually that wasn't all that was before the hearing officer in this particular case. Well, did the hearing officer consider the question of motive, or did the hearing officer just consider the question of whether there's sufficient evidence of a violation? She did. She heard Mr. Sanders' side of the story. He said, it wasn't me. I don't know anything about that. No, that's not my question. Did the hearing officer consider whether the charge was filed based on a retaliatory motive?  I thought his claim was that it wasn't his cell phone. Well, and he said, Mr. Page is retaliating against me because I filed some prison grievances against him. Now, the neutral hearing officer in this case, as I said, considered these three letters. Those letters came in to the ADC's mailroom before Mr. Sanders filed any disciplinary, or I'm sorry, filed any grievances against Mr. Page. Those three letters are what actually launched the investigation, because the mailroom supervisor provided copies of those letters to the ADC security personnel. And as a result of reading those letters, which indicated that Mr. Sanders had been using a cell phone both to make telephone calls and to send text messages to his girlfriend in Michigan, that's why Mr. Page launched his investigation. He conducted a shakedown of Mr. Sanders' barracks. He did, in fact, recover a cell phone. The hearing officer had the actual cell phone in front of her, had Mr. Page's investigation, which revealed that Mr. Sanders had been using the phone. And the hearing officer also considered Mr. Sanders' testimony in his own defense, as well as a witness statement that Mr. Sanders presented to the hearing officer. So there was more than some evidence in this case. There was quite a bit of evidence before the neutral hearing officer, and she considered all of the evidence in front of her, and she concluded that Mr. Sanders had, in fact, violated ADC regulations on the use and possession of a cell phone and found him guilty as charged by Mr. Page. That is a defense to this claim, and for that reason the Court should reverse and dismiss. Now, in addition, there's some other evidence in the record that supports the hearing officer's decision, including the results of an internal affairs investigation that was completed by Mike Brockman, which showed that Mr. Sanders had used a cell phone to make a phone call back in early July, way before these letters even came into the ADC. He had called his longtime friend on the phone. There was evidence of that in the record, as well as three different ADC appellate decisions where different levels of authority leading up to the warden at the particular unit reviewed all of the evidence and affirmed the hearing officer's decision. So under controlling precedent, there was clearly some evidence to support the determination in Mr. Sanders' retaliation claim fails as a matter of law. Now, in addition, the Court should reverse and dismiss because . . . So what did the district court say about that? Do you recall? Was there a pre-trial motion for assent or in judgment, qualified immunity? You know, I believe that there was. No, Mr. Criswell? No. I guess there was not, judging from . . . So you didn't seek qualified immunity at the end, but you did preserve qualified immunity during the trial, apparently? Yes. Yes, Your Honor. We did. We moved qualified immunity both at the close of the plaintiff's case and at the close of all the evidence and also in a post-trial motion for judgment notwithstanding the verdict. And the judge just said what? That there was sufficient evidence to support the jury's finding that there was not some evidence? Yes. The judge said he was not comfortable finding as a matter of law and taking it away from the jury. So on the retaliation claim, Mr. Sanders . . . Could the jury simply have disbelieved all of the quote, some evidence? You know, I don't believe that it ever should have gone to the jury judge because if there is some evidence, and the district court, as I said, can't weigh the credibility of the witnesses and can't really weigh the evidence. If there was some evidence before that neutral hearing officer, which we were able to show on our directed verdict motion, there was some evidence, then the Court should have entered judgment as a matter of law because that is a complete defense to this retaliation claim. In addition, Mr. Sanders didn't prove two of his elements. He did not show that but for a retaliatory motive, he never would have been hit with this disciplinary violation. And that's at Orrbauer v. Kaspari case. As I said, you know, there was the letters that had come in. There was the actual cell phone that was recovered. There was evidence that he had used the phone. So even, the case is set, even if there was some retaliatory motive, if it's not but for, if he doesn't meet that standard of proof, then his retaliation claim fails. In addition, he didn't really prove that the disciplinary charge would chill an inmate of ordinary firmness from filing grievances. There was no evidence on this point. Well, he had some pretty severe punishment, didn't he? He was, he had 30 days of solid... Couldn't a reasonable jury say that that's enough to chill the ordinary person? They could. My proposition on this particular issue is that he didn't have one affidavit or one witness that said, hey, I saw what happened to Mr. Sanders, and as a result, I haven't filed any prison grievances. So even if the Court disagrees with me on that point, though, there is insufficient evidence of the retaliatory motive in that but for a retaliatory motive, Mr. Page never would have filed. There's more than sufficient evidence in the record. Finally, on injunctive relief, briefly, I want to save a little bit of time for rebuttal, but the Court abused its discretion when it ordered a non-party to remove this disciplinary violation. Mr. Sanders' briefing concedes that on this issue, he had to demonstrate a threat of irreparable harm, a certain and great and of such imminence that there's a clear and present need for equitable relief. There was absolutely no proof in the record that having this one of many violations on his disciplinary record would have any impact on him. He was in prison for life without the possibility of parole, and his arguments on this point were completely speculative and wholly unsupported by any evidence. There was no proof that Mr. Page, the defendant, could even provide the relief requested, and the District Court actually implicitly recognized this fact when it ordered the ABC and not Mr. Page to remove the disciplinary violation. There was no evidence that he would suffer any harm, let alone this irreparable harm that was required for the grant of a permanent injunction against the Arkansas Department of Correction. Thank you. You may step forward, sir. Michael Thompson. May it please the Court. My name is Michael Thompson with Wright, Lindsay, and Jennings in Little Rock, Arkansas, and I represent the appellee, Mr. Corey Sanders. As we just discussed, Mr. Sanders obtained a successful jury verdict on his retaliatory disciplinary claim against the appellant, Mr. Joe Page. Addressing briefly the evidence that was submitted on Mr. Sanders' prima facie claim. Why don't you address the Hartsfield problem, because if there's some evidence, why aren't they entitled to qualified immunity? That's their lead argument. Absolutely, Your Honor. I'll go right to there. Hartsfield v. Nichols does say that a report from a correctional officer, even if undisputed, and even if supported by no other evidence, suffices as some evidence. That standard is in a great deal of tension with the well-established fact that a prisoner can state a retaliatory disciplinary claim by alleging that the disciplinary charge was false. Now, we can find the resolution to that tension in two places. One is in Hartsfield v. Nichols itself that says, if the violation is found by an impartial decision maker. I actually want to discuss that one second. The other one is in this Court's holding in Goff v. Burton, 91 F. 3rd, 1188, in which this Court held that if some evidence is to be distinguished from no evidence, it must possess at least some minimal probative value to satisfy the due process requirement that the decisions of imprisoned administrators have some basis in fact. It went on to hold that we do not have to give credence to evidence that common sense and experience suggests is incredible. And so we must determine if the evidence offered at the disciplinary hearing meets this minimal reliability standard. So why wouldn't the existence of the cell phone near your client, as well as the letters from Ms. Slater suggesting that there were texts from him, why wouldn't that be sufficient? Well, Your Honor, let's go through the evidence that was offered at the disciplinary hearing. First, much of the evidence doesn't prove at all that my client was using the cell phone. That's what he was accused of. So, for example, there wasn't the cell phone itself that was offered at the disciplinary hearing. It was a photocopy of the cell phone. And the photocopy of the cell phone does not in any way prove that my client was using it. Next was a chain of custody. Didn't the report say that it was found in the same cell areas? It was, yes, Your Honor. It was found in the same barracks as my client. But the barracks were divided by a half-wall divider. It was found on a bunk that was on the other side of that divider from my client's bunk in the farthest corner of the room from my client's bunk. Testimony also established that my client had no advanced knowledge that the shakedown was going to occur and that as soon as it began, he was required to move away from his bunk. So the fact that it was found on another inmate's bunk within What about the letters from Ms. Slater? Let's address the letters from Ms. Slater. First of all, we have one primary problem with the letters, which is that Corey Sanders never received those letters. His testimony, and this was a disputed issue of fact, but the jury was entitled to resolve it in his favor, is that he never received the letter. He didn't see them before the disciplinary hearing. He didn't see them during the disciplinary hearing. Why does that matter? It matters for two reasons. First, it gives Mr. Page the opportunity to falsify these letters to the extent they were not already forged and raises questions about their reliability. Second, it makes the author of these letters, whoever he or she may have been, in effect a confidential source. The requirement to evaluate the evidence offered at the disciplinary hearing in Goff v. Burton, this court held, applies specifically to statements of confidential sources. And the court went on to hold that the defendant's failure to properly investigate the statement of the confidential source heightens the suspect nature of that evidence. It's undisputed that no one investigated these letters. No one, for example, contacted the author, even though Ms. Minnie Dreher, the hearing officer, testified that it would have taken as little as five minutes to do so. No one made an effort to resolve the conflict between the name that's on the envelope and the name that the letters are signed on. It says Nicolette Slater on the envelope. It's signed by Erica or E. No effort was made to determine why one letter is in a different handwriting from the other two. And no one made any effort to verify the very specific factual statements made in these letters. For example, at one point one of the letters says, I received all 14 text messages you sent on July 29, 2009. No one ever bothered to check the phone to see if there were 14 text messages sent on July 29, 2009. The phone was not at the disciplinary hearing. It was at the trial, but it was never turned on. The letters also raise suspicions about the author's reliability. For example, the letters specifically state that the author knows that using a cell phone in prison would be a violation of prison policies. Letters also show that the author had a motive to falsely accuse Sanders. Specifically, the letters accuse Sanders of having been unfaithful with another woman. They use very unkind language toward Sanders that frankly I'm not comfortable repeating in open court. And they include veiled threats such as, Hell hath no fury like a woman's scorn. Common sense and experience says we do not take letters like that at face value. Now the only other evidence that was offered at the disciplinary hearing that said anything about whether or not my client had used a cell phone was Mr. Page's disciplinary charge and the incident report that accompanied it. And that also fails this minimal reliability standard. The disciplinary charge simply states here's the charge I'm bringing. The incident report adds the list of evidence that supposedly supports that charge. That list of evidence includes saved multimedia voice text messaging, verbal and written statements, and statements of confession. None of that evidence was presented at the disciplinary hearing. None of it was presented at the trial in this matter. He is making a clear statement of objectively verifiable fact. It would have been easy to produce that evidence at the hearing or at the trial. But when he failed to do so, it raises sufficient suspicions about his disciplinary charge and his incident report to make it insufficiently reliable to constitute some evidence. In addition, the some evidence defense requires that there be an impartial hearing, an impartial hearing and an opportunity to persuade an impartial decision maker. This hearing lasted 12 minutes. Ms. Dreher's testimony was not that she considered Page's motive in this. Her testimony was that the hearing consisted of her reading the charge, Sanders denying the charge, and her affirming the charge. She further testified that generally speaking the only reason she overturns a charge is if the officer has cited an inapplicable rule. Thus, in that brief amount of time, Sanders did not have the opportunity to persuade her. And since he did cite the right rule for use of cell phones, chances are Ms. Dreher was not persuadable. We also have to look at the procedures established by Wolf v. McDonald. Because if the defendant is going to rely on a some evidence defense, it must show that the charge was affirmed and the disciplinary proceeding satisfied those procedures. Those procedures that the inmate must be provided advance written notice of the claim violation, must be given a brief period to prepare, must be able to call witnesses and present evidence. And what are you reading from? Which procedures are you reading from? The Wolf v. McDonald procedure. And which case says that all of those apply before we'll apply the some evidence? Parkfield v. Nichols makes specific reference to Wolf and the procedures that it established for determining whether or not there was an impartial decision maker. Well, it refers to Wolf, but you think it says that, where do you think it says that all of those procedures have to apply? I know it makes specific reference to the procedures that are established by Wolf, and I believe it briefly summarizes those procedures. Does it say they're all required, though? Your Honor, it was the way I interpreted the case, that they were all required. And here the problem on that front is these letters were not in the notice of charge. And again, the testimony was that the letters themselves were never provided to my client, either before or during. What in Wolf says he has to get? I mean, a criminal defendant in a federal criminal case doesn't even get discovery before the trial. Well, Wolf discusses the fact that when the evidence changes between the notice of charge and the disciplinary hearing, then the inmate is deprived of an opportunity to marshal his facts and prepare. That's not a change in the charge, though, is it? It's just more evidence of the violation. I believe Wolf refers to a change in the evidence on which the charge relies. And here the charge does not make any mention of these letters. And my client had no way to know that they existed. So he had absolutely no way to marshal any sort of defense as to. He was not even allowed to see them during the disciplinary hearing. Again, if that's the primary evidence on which this disciplinary proceeding relies, no matter what standard you apply, he was not given an opportunity to persuade Ms. Dreher because he was never even afforded the opportunity to see the letters themselves. What does the record show about that, about how the letters were introduced and why he wasn't supposedly allowed to see them? We have his testimony that he said he was not allowed to see them. We have Ms. Dreher's testimony, again, that the hearing consisted solely of her reading the charge, his denying the charge, and then her affirming the charge. So between the two. We have him affirmatively saying, I was never provided those letters. Does he say, I asked the hearing officer to look at them and she refused to let me see them? My client did not know that they existed until he received the notice of evidence relied upon and it made reference to a letter. It was my client's testimony that that was the first time he knew that the letters existed. He went into the hearing blind. Having not received the letters and having received no advance notice, he never knew the letters existed until he received the notice of evidence relied upon. What sort of grievance procedure do they have in this facility for somebody who is disciplined at a hearing like that? There is an appeal process, Your Honor. What, if anything, did your client take advantage of? He did continually appeal it. It's my understanding he hadn't seen the letters until the day of trial in this case. I'm not sure that he ever would support an opportunity to persuade anyone. In his administrative appeal, did he seek access to the letters so that he could make whatever arguments? He filed a number of grievances, separate grievances, that said, I understand there are some letters that I haven't been receiving. I should be receiving my mail in accordance with ADC policy. I'm not sure whether that's responsive to my question or not. In the administrative appeal of the disciplinary action, did he request? I frankly do not recall, as I stand here, that they are certainly in the record. I just do not recall, as I stand here. Well, I'm just wondering why you can say that the process was flawed if he had an opportunity through the grievance. Appellate grievance procedure to get access to whatever letters that he didn't see earlier. I'm not sure that he did have the opportunity to obtain those letters, Your Honor. We know that he had not received. That's why I asked if he requested them. Yes, Your Honor, and I do not know, as I stand here. If I may just briefly address a few other points that were raised. On the prima facie case on the elements my client was proved, again, we did offer ample evidence of the fairly harsh punishments he was subjected to. That included 30 days solitary confinement. That included 60 days loss of privileges. He had a reduction in class from the best to the worst, and he lost his job. He also testified himself as to what constituted a person of ordinary firmness and that he was not such a person. And this is an objective test, and I believe that evidence is sufficient under an objective test to find that a person of ordinary firmness would have been chilled in filing further grievances. In terms of the causal connection between the grievance and the disciplinary charge, again, we offered ample evidence regarding the history between the parties on the complaints that were raised in these grievances and the lengths to which the page had gone to to have that complaint withdrawn on an earlier occasion. We had evidence that page had commented that he did not need these sort of complaints pending against him due to his pending promotion. We have admissions from page that he had, in fact, violated, committed some of the rules violations that were alleged in these grievances and that those were potentially fireable offenses. And so on both elements taken together, we've offered sufficient evidence to allow a jury to reasonably find in our favor. I have just a few seconds more, so I will just say that I will rely on my briefing on the cross appeal and ask you to reverse the district court on that one. Thank you. Thank you very much, Mr. Thompson. Is there rebuttal time available? Three minutes. You can wrap it in three. Thank you, Judge. Just a couple of points. Counsel stated that Mr. Sanders had no knowledge that the shakedown was going to be going on in his barracks. I just want to say that's false. He filed a grievance about Mr. Page's suspicion that he had been using a cell phone two days prior to the shakedown. So he knew, Mr. Sanders knew he was the target of investigation about using a cell phone. Regarding the letters, Mr. Sanders' own testimony on cross-examination at trial showed that these letters met a minimal standard of reliability, which was all that we had to show under Goff v. Burton. The letters arrived by United States mail. They were opened by the mailroom supervisor. She testified Mr. Page was nowhere in the building. She opened the letters. She read them and screened them in accordance with ADC policy, and when she saw that they were evidence of a rule violation, she made photocopies of those letters, provided them to ADC security personnel, and then forwarded the originals on to Mr. Sanders. He admitted that he knows the author, Nicolette Slater, that that is her name, but that she goes by the name of Erica. Mr. Sanders testified that he knew her, and he was corresponding with her back in July of 2009 when the three letters at issue were sent. Mr. Sanders acknowledged that Ms. Slater was a friend of his, that she lived in Michigan, and that the letters were mailed from her address. He confirmed that the return address labels on those letters were correct. Mr. Slater significantly authenticated the handwriting. He said, yes, the first two letters certainly look like her handwriting, and she was mad at me at the time that she wrote those letters, and the statements in those letters sounded like things she would have said to me at that time. His testimony itself validated these letters, Your Honors, and so there really should be no question. Those letters standing alone were some evidence before the neutral hearing officer that he had committed violations of ADC policies with regard to cell phones. Regarding the hearing process, the court is correct that the Wolf due process hearing standards don't apply in this case. There was no liberty interest at issue with regard to Mr. Sanders, unlike in Hartsfield where the inmate did lose good time credit and lost some of his liberty as a result of the adverse disciplinary decision. Mr. Sanders did not lose any liberty interest, and under Sandin v. Conner, United States Supreme Court case, the due process standards outlined in Wolf don't apply. Nevertheless, we met the standards in this particular case. He did have advance written notice of the charge and the evidence upon which it was based. The charge said it was based on written statements collected during the investigation. That's all it needed to say. Mr. Sanders did have adequate time to prepare, nine days. He had an opportunity to present evidence, to present witness statements, to make a statement in his own defense, and then the hearing officer did provide a written decision. So that's really not an issue in this particular case. Just briefly on the attorney fee issue, counsel didn't address it, but it's clear that if the court were to affirm on direct appeal, the court should nevertheless, I'm sorry, should it affirm on direct appeal, the cross appeal should be affirmed as well. There was no evidence that the district court abused its discretion when it denied the second motion for attorney's fees. The court found that the requested $38,000 in fees were, without question, unreasonable given the minimal relief obtained. Thank you, Your Honors. Thank you very much. That concludes the arguments in this case.